IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANDRE GEORGE THOMAS                §
TDCJ-CID NO.01295151,              §
        Petitioner,               §
                                  §
v.                                 §       CIVIL ACTION NO. H-06-1672
                                  §
BRAD LIVINGSTON,                   §
        Respondent.               §

<u>OPINION ON DISMISSAL</u>

Petitioner Andre George Thomas, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed, through counsel, a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the revocation of his deferred adjudication probation. (Docket Entry No.1). Respondent seeks summary judgment on grounds that petitioner's claims are unexhausted, procedurally barred, and without merit. (Docket Entry No.4). Petitioner has filed a response to respondent's motion. (Docket Entry No.8). After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and dismiss this habeas petition.

<u>I. PROCEDURAL HISTORY</u>

Petitioner entered a plea of guilty to the offense of aggravated robbery in cause number 774091. On March 25, 1998, the 337th Criminal District Court of Harris County, Texas accepted the plea but deferred the adjudication of guilt and placed him on probation. *Ex parte Thomas*, Application No.64,054-01, pages 61-62. Among other conditions, petitioner was ordered to commit no criminal offense, avoid alcoholic beverages, pay a monthly supervision fee and fine, and report monthly to the Harris County Adult Probation Department. *Id*. Petitioner acknowledged by his signature on a written document that the state district court had "the authority at any time during

the period of probation to revoke [his] probation for violation of any of the conditions of probation."
*Id.*, page 62.  On October 4, 2004, the State moved to adjudicate petitioner's guilt, alleging that
petitioner committed the offense of driving while intoxicated ("DWI"), refused to provide a breath
sample to a police officer who requested it; failed to report to his probation officer in January 2001,
and in May 2003, and failed to pay his fine and court costs such that as of September 23, 2004, he
was $125.00 in arrears.  *Id.* pages 63-64.  Petitioner pled true to these allegations.  On December
24, 2004, the state district court revoked his deferred adjudication probation, found him guilty of
aggravated robbery, and assessed punishment at ten years confinement in TDCJ-CID.  *Id.* pages 65-
66.

Petitioner did not file a direct appeal from the aggravated robbery conviction or the
probation revocation.  On July 29, 2005, petitioner filed, through new counsel, a state habeas
application challenging the revocation of his probation on the following grounds:

1.   He entered an involuntary plea of true to allegations that he violated the
terms of his deferred adjudication probation because his retained counsel
advised him to enter such plea without explaining that he was confessing to
the DWI offense;

2.   He did not receive the effective assistance of counsel during the probation
revocation proceedings.  Petitioner's counsel (a) did not present the
testimony of Dr. Mauskar, which would have shown that petitioner was not
driving while intoxicated; (b) advised petitioner to plead true to an allegation
that he refused to provide a breath sample to the attending police officer
even though providing a breath sample was not a condition of probation; (c)
did not present the police videotape taken after his arrest, which showed that
petitioner was not intoxicated; and, (d) did not investigate the State's
allegations in the motion to adjudicate guilt.

3.   Petitioner did not violate the terms of his deferred adjudication probation
because he did not commit the DWI offense.

*Ex parte Thomas*, Application No. 64,054-01, pages 2-9.  The state habeas court ordered petitioner's
counsel to file an affidavit addressing specific issues related to petitioner's claims.  *Id.*, page 19.
Petitioner's counsel filed such affidavit.  *Id.*, pages 26-30.  Thereafter, the state district court, sitting

as a habeas court, entered findings of fact and conclusions of law, and recommended that relief be denied. *Id.*, pages 39-40. The Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on the findings of the trial court without a hearing. *Id.*, at cover.

Petitioner filed, through counsel, the pending federal habeas petition on May 16, 2006. (Docket Entry No.1). Petitioner seeks federal habeas relief on the following grounds:

1. Petitioner entered an involuntary plea of true to the allegations in the State's Motion to Adjudicate Guilt because his counsel advised him to do so without explaining that he was confessing that he had violated the terms of his deferred adjudication probation;

2. Petitioner was denied the effective assistance of counsel at the revocation hearing. Petitioner's counsel (a) failed to present the testimony of Dr. Anant Mauskar; (b) advised petitioner to plead true to an allegation that he refused to provide a breath sample even though it was not a condition of deferred adjudication probation; (c) did not present the police videotape, which showed that petitioner was not intoxicated; and (d) did not investigate the allegations in the State's motion to adjudicate and failed to discover that petitioner did not violate any of the terms of his deferred adjudication probation, including condition that he pay monthly fines and fees; and,

3. All of the evidence shows that petitioner was not guilty of the DWI offense, one of the allegations in the State's Motion to Adjudicate Guilt. His counsel's advice to represent otherwise to the state district court amounts to ineffective assistance.

(Docket Entry No.1). Petitioner attached to his petition three exhibits, which were not presented to the state habeas courts, *i.e.* the affidavits of his wife and the attorney who represented him on the DWI charge, and his medical records from Dr. Mauskar's office. (*Id.*).

Respondent moves for summary judgment on the following grounds:

1. Petitioner has not exhausted his state remedies because he attached new evidence to his federal petition that strengthens significantly the evidentiary posture of his claims more so than when they were before the state court;

2. This Court cannot consider the claims supported by the three new exhibits because they are procedurally defaulted under state law and therefore, barred in federal court; and,

3. Petitioner has failed to meet his burden of proof under 28 U.S.C. §2254(d)(1).

(Docket Entry No.4).

II. DISCUSSION

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

A. Exhaustion

The threshold issue under consideration is whether petitioner's claims are procedurally barred because he has failed to exhaust state remedies with respect to the three new exhibits.

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320 (1997). Under 28 U.S.C. § 2254 of the AEDPA, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). The doctrine of exhaustion, codified as amended at 28 U.S.C. § 2254(b)(1) and (c), reflects a policy of federal/state comity. *Coleman v. Thompson*, 501 U.S. 722 (1991). Those statutes provide in pertinent part as follows:

4

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that  –

(A)   the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)   there is an absence of available State corrective process; or

(ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

\*     \*     \*     \*     \*

(c)   An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254 (b) – (c).  Under this framework, exhaustion means that the petitioner must have presented all of his habeas corpus claims fairly to the state's highest court before he may bring them to federal court.  *Castille v. Peoples*, 489 U.S. 346 (1989); *Fisher v. State*, 169 F.3d 295, 302 (5th Cir. 1999).  "This requirement is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition."  *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003).  The Fifth Circuit has consistently held that a "'petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to the state court.'"  *Id.* quoting *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996) (emphasis added by *Anderson* Court).

Exhaustion inquiries are fact-specific; dismissal of a claim, as a general rule, is not required when evidence presented for the first time in a federal petition supplements, but does not fundamentally alter, the claim presented to the state courts.  *Id.* at 386-87.  A habeas petitioner may present some evidence to a federal court that was not presented to the state court, but "evidence that

'places the claims in a significantly different legal posture must first be presented to the state courts.'" *Id.* at 387 quoting *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997).

Respondent contends that the three new exhibits raise new significant evidentiary support of petitioner's ineffective-assistance-of-counsel claims, which is testimonial in nature.  (Docket Entry No.4).  Respondent further contends that this newly attached unexhausted evidence was discoverable when petitioner filed his state habeas application, therefore, should petitioner include this unexhausted evidence in another state habeas application, such application would be denied as an abuse of the writ under state law.  (*Id.*).

Petitioner, however, claims he has met the federal exhaustion requirement because the new exhibits supplement the claims, which he presented in state court, and do not significantly change the legal posture of the claims that he presented in state court.  (Docket Entry No.8).

1. Medical Records

Petitioner alleges in his state habeas application and the pending petition that his counsel was ineffective because he did not present Dr. Mauskar's testimony to the state district court during revocation proceedings and that Dr. Mauskar's testimony would show that petitioner did not commit the offense of driving while intoxicated.  *Ex parte Thomas*, Application No.64,054-01, ground 2; (Docket Entry No.1).  Petitioner indicates in both documents that Dr. Mauskar would have testified that petitioner suffered a head injury in the accident and that any indicators of intoxication were due to the head injury and not alcohol.  *Id.*

Dr. Mauskar's records show that the symptoms petitioner presented on examination the day after the accident were consistent with a head injury.  (Docket Entry No.1, Exhibit C).  Because Mauskar's records are consistent with petitioner's allegations regarding the content of his testimony, the medical records do not significantly alter the legal posture of petitioner's ineffective-assistance-

6

of-counsel claim.  Such documents merely supplement petitioner's claim.  Accordingly, such claim is exhausted and therefore, not subject to the federal procedural bar.

## 2. Wife's Affidavit

Petitioner contends in both habeas actions that his counsel was ineffective because counsel told petitioner that by pleading true, he would get a good result from the court.  Petitioner maintains in both actions that he told counsel that he did not commit the DWI offense and that counsel did not explain that by pleading true, petitioner was admitting that he had committed such offense.  Petitioner also maintains in both actions that his counsel was ineffective by not presenting the police videotape because the tape showed that he was not intoxicated.  Petitioner further maintains in both actions that his counsel failed to investigate the allegations in the Motion to Adjudicate Guilt.  *Ex parte Thomas*, Application No.64,0154-01, grounds 1, 5, 6; (Docket Entry No.1).

In her affidavit, petitioner's wife Belinda Thomas attests that she attended two meetings with petitioner's retained counsel, during which counsel implied that he could get a favorable result because he knew the presiding judge.  (Docket Entry No.1, Exhibit D).  Thomas indicates that counsel reviewed the videotape with both of them and pointed out several aspects of the tape that were positive.  She attests that counsel commented that the tape supported petitioner's concussion injury.  She also attests that petitioner told counsel that he had not had anything to drink.  Thomas attests that on the day of the hearing counsel "told my husband that the best thing to do would be to plead true to the allegations and he would get a favorable result." (*Id.*).  She further attests that counsel did not explain what a plea of true meant or the consequences of pleading true and her husband did not understand the same. (*Id.*).

Although Thomas's affidavit directly responds to averments made by petitioner's counsel in his affidavit before the state habeas courts, it does not change the legal posture of petitioner's

claims; it merely restates his claims.  Accordingly, the Court finds this claim is exhausted and not subject to the federal procedural bar.

### 3. Attorney's Affidavit

In his state habeas application, petitioner alleges in ground four that "[a]ll of the evidence will show that I did not violate my probation because I did not commit the offense of driving while intoxicated.  I am innocent."  Petitioner alleged in the state habeas application that the videotape showed that he was not intoxicated, that he had not had anything to drink that evening, and that he suffered a head injury in the accident, and that the symptoms associated with the injury could have impaired his performance on field sobriety tests.  *Ex parte Thomas*, Application No.64,054-01, pages 7-8.

In ground six of the pending petition, petitioner pleads the same, except that he claims he only entered a guilty plea on the advice of his counsel, which amounts to ineffective assistance of counsel.  (Docket Entry No.1, pages 2, 5).

In his affidavit before the state habeas court, petitioner's counsel Jim Lindeman attested to his contact with Attorney Charles Kingsbury about the DWI charge, as follows, in pertinent part:

> I did view the video tape made of Andre George Thomas relative to his arrest for DWI.  I met with him in my office prior to the court hearing and reviewed the video tape with him.  We also discussed all of the allegations contained in the motion to adjudicate and the evidence of the case.  The video was a station house video, there was no scene video that I recall.  We discussed the video interview in which he denied drinking, a claim that he later told me was not true.  We also discussed the knee injury that he claimed on the tape.  We discussed my concern that the testimony of the civilian witnesses and the arresting officer could not be overcome by his denials.  I showed Mr. Thomas notes that I had obtained from Charles Kingsbury, his attorney retained to defend the misdemeanor DWI.  These notes reflected Mr. Kingsbury's conclusion that he evidenced signs of intoxication–poor balance during the walk and turn test and one leg stand.

*     *     *     *     *

It was, and still is, my opinion that it was detrimental to the interest of the client to offer the DWI video at the hearing on the motion to adjudicate, for as he and his DWI attorney agreed, it help establish his intoxication.

\*   \*   \*   \*   \*

I spoke with his DWI attorney, Mr. Kingsbury, and obtained his opinion of the video and a copy of his entire file.

*Ex parte Thomas*, Application No.64,054-01, pages 26-30.

In his affidavit attached to the pending petition, Charles Kingsbury attests that he represented petitioner on the DWI charge in 2004.  (Docket Entry No.1, Exhibit E).  Kingsbury further attests that he reviewed the jail and scene videos, the State's file, and discussed the DWI case with the district attorney's office.  (*Id.*).  Kingsbury attests that the Harris County District Attorney's Office dismissed the DWI case in its entirety.  Kingsbury indicates that he "does not remember telling the attorney that represented Andre Thomas in the felony Motion to Revoke Probation that Mr. Thomas did not have a defenseable [sic] case."  (*Id.*).  He avers that he remembered that he thought it was a case that they could win and that is why he set it for trial and the client paid his trial fee after discussing the case with him at length.  (*Id.*).

State habeas records do not show that petitioner informed the state habeas court that his DWI charge had been dismissed or that his defense attorney thought, after reviewing all of the evidence, that the case was winnable.  Unlike the medical records and Thomas's affidavit, which supplement petitioner's state habeas claims, Kingsbury's affidavit responds directly to Attorney Lindeman's affidavit and adds new factual allegations.  *See Joyner v. King*, 786 F.2d. 1317, 1320 (5th Cir. 1986) (noting court's unwillingness to accommodate new factual allegations in support of a previously asserted legal theory).  Such affidavit adds significant evidentiary support to petitioner's claim of actual innocence and ineffective assistance of counsel.  Because he did not

present such information to the state habeas courts, his actual innocence claim and related ineffective assistance of counsel claims are unexhausted.

4. New Claim

Petitioner has also failed to exhaust the pending claim that Attorney Lindeman failed to discover that petitioner had not violated any of the terms of his deferred adjudication probation, including the condition that he pay a monthly fine and fees.  (Docket Entry No.1).  Petitioner did not raise such claim in his state habeas application; therefore, such claim is unexhausted.

B. Procedural Bar

A procedural bar for federal habeas review occurs if the court, to which a petitioner must present his claims to satisfy the exhaustion requirement, would now find the unexhausted claims procedurally barred. *Coleman v. Thomas,* 501 U.S. 722, 735 n.1 (1991).  Texas prohibits successive writs challenging the same conviction except in narrow circumstances.  TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a) (Vernon 2005).  The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

> (1)  the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

> (2)  by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.*  The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly.  *Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner does not state specific facts to show that the above-mentioned claims in the pending petition could not have been raised in his state habeas application; nor does he allege

specific facts that would establish that he is innocent in any of his pleadings.  (Docket Entry No.8).

Therefore, petitioner's unexhausted claims do not fit within the exceptions to the successive writ

statute and would be procedurally defaulted in state court.  *Coleman*, 501 U.S. at 735 n.1.  Such a

bar precludes this Court from reviewing petitioner's claims absent a showing of cause for the

default and actual prejudice attributable to the default.  *Id.* at 750.

Although petitioner filed a response to the motion for summary judgment, he does not

address the default, the cause of the default, or prejudice resulting from the default in the response.

(Docket Entry No.8).  Accordingly, petitioner's claim that all of the evidence shows that petitioner

was not guilty of the DWI and his counsel's advice to represent otherwise to the state district court

amounts to ineffective assistance and his claim that he did not violate any of the terms of his

deferred adjudication probation, including the condition that he pay monthly fines and fees, are

procedurally barred.

C. Ineffective Assistance of Counsel

Respondent also moves for summary judgment on the ground that petitioner has failed to

meet his burden under 28 U.S.C. § 2254(d)(1) to show that his deferred adjudication counsel

rendered constitutionally ineffective assistance.  (Docket Entry No.4).

The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope

of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th

Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state

prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court

convictions are given effect to the extent possible under the law."  *Bell v. Cone*, 535 U.S. 685, 693

(2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court without a hearing.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner in the state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness."  *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).  Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis,

"we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

1. Standard of Review

The traditional right to counsel in the Sixth Amendment to the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The right to counsel includes the right to effective assistance of counsel at trial. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on a Sixth Amendment claim, a petitioner must prove that counsel's representation "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable. *Id.* at 687.

Petitioner argues that the state habeas courts' decision to reject his ineffective-assistance-of-counsel claims is contrary to, or involved an unreasonable application of the Supreme Court's decision in *Strickland*. (Docket Entry No.1). Respondent disputes that petitioner has the same right to reasonably effective assistance of counsel belonging to a criminal defendant under the Sixth Amendment, as articulated in *Strickland*, because a hearing on a motion to revoke deferred adjudication probation is not a criminal trial. (Docket Entry No.4).

The Constitution does not provide an absolute right to counsel at a probation revocation hearing, although due process may require that an attorney be appointed in a particular case. *Gagnon v. Scarpelli*, 411 U.S. 778, 787-91 (1973). In contrast to a criminal prosecution, a probation revocation proceeding is informal in nature. *Id.* at 788-89 (noting "critical differences between criminal trial and probation or parole revocation hearings"). "In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges

against him.  And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible to proof or is so simple as not to require either investigation or exposition by counsel."  *Id.* at 787.

In this case, counsel was not appointed to represent petitioner.  Attorney Jim Lindeman was retained to represent petitioner at the revocation proceeding.  Nevertheless, the State's Motion to Adjudicate Guilt accused petitioner of committing a criminal offense while on probation.  *Ex parte Thomas*, Application No.64,054-01, page 63.  Therefore, petitioner may have had a right to counsel under the Due Process Clause.  Accordingly, the Court assumes, without deciding, that the *Strickland* standard applies in this instance.

2. Involuntary Plea

Petitioner contends that his plea was involuntary because Lindeman advised him to plead true to the State's motion to revoke deferred adjudication probation to get a "good result," without explaining the consequences of such plea and ignoring his contentions that he did not violate such probation.  (Docket Entry No.1).  Petitioner maintains that because Lindeman would not present evidence on his behalf, he was forced to enter an involuntary plea of true to the State's allegations.  (*Id.*).

In his state habeas application, petitioner indicated that his plea was involuntary for the same reasons.  *Ex parte Thomas*, Application No.64,054-01, page 6.  Unlike the pending petition, where petitioner claims he told counsel that he did not violate probation, petitioner indicated in his state habeas application that he had told Lindeman in previous discussions that he "did not commit the alleged violation of driving while intoxicated."  *Id.*  Petitioner claimed that counsel "did not explain to me that by pleading true I was admitting that I committed the offense of driving while

intoxicated.  I would not have agreed to plead true if I had understood that it meant I was admitting that I was guilty of driving while intoxicated."  *Id.*

The state habeas court found the following, in pertinent part, with respect to petitioner's claims of involuntary plea and the ineffectiveness of counsel:

1.  Jim Lindeman, Applicant's counsel in the adjudication phase (adjudication counsel), did not inform Applicant that he would receive a "good result" if he pled true to the allegations in the motion to adjudicate guilt;

2.  Adjudication counsel explained to Applicant that he was admitting to committing the driving while intoxicated (DWI) offense by his plea of true to the allegations in the motion to adjudicate guilt;

3.  Applicant's guilt in cause number 744091 was adjudicated based upon his plea of true to the allegations that he violated the law by driving while intoxicated, by refusing to offer a breath specimen, by failing to report to report [sic] to the probation officer, and by failing to pay the fine and court costs;

4.  Notwithstanding the DWI law violation, the trial court had sufficient basis to find that Applicant violated the terms and conditions of his community supervision and to adjudicate his guilt in cause number 744091;

\* \* \* \* \*

6.  The totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of counsel in the adjudication phase;

7.  Applicant's plea of true to the allegations in the motion to adjudicate guilt was knowingly and voluntarily entered; and

8.  Applicant has failed to demonstrate that his conviction was improperly obtained.

*Id.*, page 39.  The Texas Court of Criminal Appeals denied petitioner's state habeas application on these findings.  *Id.* at cover.

A guilty plea in a criminal trial will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently.  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).  A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any

commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced

by threats, misrepresentation, or improper promises having no relationship to the prosecutor's

business, such as bribes. *Brady v. United States*, 397 U.S. 742, 755 (1970). "The long standing test

for determining the validity of a guilty plea is 'whether the plea represents a voluntary and

intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*,

474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  To establish

that his plea was involuntary due to counsel's advice to enter a plea of true to violating the

conditions of probation with the promise of a good result and without explanation that he was

confessing to the DWI offense, petitioner must show that counsel's representation fell below an

objective standard of reasonableness and a reasonable probability exists that, "but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474

U.S. at 59.

In his affidavit before the state habeas courts, Lindeman attested to the following:

> I do not recall telling Mr. Thomas that he would receive a 'good result' if he pled 'true' to the motion to adjudicate, and I am certain that I did not tell him those words as we discussed his options.  I make it a regular practice to inform every client of the full risk and uncertainty of every such plea.  I did have a long discussion with my client in my office prior to the hearing during which I informed him of all of his options.  I told him of my worry that if we forced the State to put on evidence in support of all of his alleged violations the effect would be to cause Judge Stricklin to pronounce a harsher sentence than would be given if Mr. Thomas accepted the plea offer of the State.  He would not agree to accept the State's offer of time in TDCJ.  I explained to him that day in my office and again immediately prior to the hearing that I believed that the testimony of the injured driver and witness would impact the Judge and likely cause a harsher punishment than we might otherwise be able to obtain.  My client told me that his truthful testimony would be that he had been drinking that night and was intoxicated.  On December 10, 2004, the State had all necessary witnesses present and I believe was ready to prove each accusation against my client.  I spoke to each of the State's witnesses.  They included two very credible civilian witnesses, one of whom was injured in the accident allegedly caused by my client.  I tried to get them both to agree that Mr. Thomas should only be required to do some minimal jail time. . . . The witnesses were very adamant and wanted Mr. Thomas to go to prison for a significant period of time.  I spoke with my client and it was agreed that we would attempt to keep the State's witnesses off the

> stand by entering a plea of true to the allegations, testimony that he told me was in fact true.  He told me that his truthful testimony would be that he did in fact drive while intoxicated and did fail to report to his probation officer.  My client did take the stand and we put on the facts in the best light possible.  Mr. Thomas testified with a full understanding of the risk of testifying and of pleading "true."  The Judge did admonish him prior to accepting his plea of "true" and before hearing his testimony.  Mr. Thomas told the Court that he did fail to report on two occasions, once during the week of his marriage and once at a time that he was ill.  My client entered his plea of true and testified to facts supporting this plea, explaining where he had been prior to the accident and what alcoholic drink he had prior to driving.  He did so knowing that the Judge would revoke his probation and punish him.  This I know because we discussed it at length prior to the hearing.

*Ex parte Thomas*, Application No.64,054-01, page 28.

Petitioner presents no evidence to contravene Lindeman's attestation that the state district judge admonished petitioner before accepting his plea of true and before hearing petitioner's testimony.  Therefore, regardless of Lindeman's alleged deficiencies, petitioner fails to show by the court's admonishment that he was not aware of the consequences of entering a plea of true and that he would not have entered such a plea but for counsel's errors.

Moreover, petitioner acknowledged in a "Statements and Waivers of Defendant," entered prior to the state district court accepting his plea on the underlying aggravated robbery charge, that he understood that if the state district court granted deferred adjudication probation, he might be arrested and detained on the violation of any condition of such probation.  *Id.*, pages 48, 50.  Petitioner further acknowledged by his signature the terms of the probation and his understanding that the state district court had "the authority at any time during the period of probation to revoke [his] probation for violation of any of the conditions of probation."  *Id.*  "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Accordingly, petitioner fails to show that the state habeas courts' findings that his plea of true was voluntary was an unreasonable application of clearly established federal law.

3. Other claims

Petitioner fails to overcome the prejudice prong of the *Strickland* standard with respect to his remaining ineffective assistance of counsel claims.  Petitioner presents no evidence to show that he did not violate any of the terms of his deferred adjudication probation and the record reflects that he acknowledged by his signature on court documents his understanding that such probation could be revoked for the violation of any one of the enumerated conditions.  *Ex parte Thomas*, Application No.64,054-01, pages 62-63.  Moreover, petitioner does not dispute that he failed to report to a probation officer.  Under Texas law, a finding of a single violation of the terms of probation is sufficient to support the court's revocation order.  *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980).

Petitioner's argues that "[i]f the failure to report had been Thomas' only proven violation, common sense can tell the Court that either Thomas' deferred adjudication would not have been revoked, but instead modified, or the sentence handed down would not have been as severe." (Docket Entry No.8, page 8).  Petitioner's argument is not supported by state or federal law.

Therefore, petitioner fails to show that the state habeas courts' finding that the state district court had sufficient basis to find that petitioner violated the conditions of his deferred adjudication probation and to adjudicate his guilt, notwithstanding the DWI violation, and that counsel rendered effective assistance of counsel during the adjudication phase are not unreasonable applications of clearly established federal law.

Accordingly, respondent is entitled to summary judgment.

## III. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability from this decision will not issue.

## IV. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding, the Court ORDERS the following:

1.    Respondent's motion to withdraw Assistant Attorney General Abigail L. Rushing from this cause and to substitute Assistant Attorney General Carole S. Callaghan as counsel for respondent (Docket Entry No.10) is GRANTED.

2.    Respondent's motion for summary judgment (Docket Entry No.4) is GRANTED.

3.    Petitioner's habeas claims are DENIED and his petition is DISMISSED, with prejudice.

4.      A certificate of appealability is DENIED.

5.      Petitioner's request for an evidentiary hearing (Docket Entry No.8) is DENIED.

6.      All other pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

Signed at Houston, Texas, on this 30th day of March, 2007.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE